R. B. BLALACK v. THE STATE.

No. 15778. Delivered April 19, 1933.
Reported in 60 S. W. (2d) 231.

The opinion states the case.

*C. E. Florence, G. L. Florence,* and *Edwin M. Fulton,* all of Gilmer, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, two years in the penitentiary.

Appellant admittedly killed a neighbor boy. According to the testimony of the state, the following facts appear: Appellant came to the home of deceased on the day before this homicide, and the two men were near each other. Deceased spoke to appellant, who did not reply. The men were then in the home of a son of deceased. Deceased picked up his little niece, passed appellant, spoke to him, but received no reply, and carried the child on down the road toward the home of deceased. The next morning appellant came again to where deceased was. A witness swore that she heard appellant say: "G—d damn you, I am going to kill you; where were you at?" Deceased replied, "It was not me, Uncle Bob." Appellant repeated that he was going to kill deceased. who again said, "Mr. Bob. I can prove it was not me; I have witnesses to prove it was not me." Appellant said, G—d damn your witness; I want to know where you were when you done this." At this time the father of deceased came up and said, "Mr. Bob, give us a chance." And appellant said, "G—d damn it, I will give *you* a chance to get yourself on that road,—run." Deceased then again said he was not the one, and appellant said, "G—d damn it, I came over here yesterday to kill you, but for the sake of that little old kid I did not do it; you picked her up for protection; she said it was you, and G—d damn it, you are not. going to make her out no lie." He then struck at deceased with the pistol and shot him. Appellant offered no defense save that he had been told that deceased had ruined his daughter; that he went to where deceased was and told him what he had heard, and deceased said he was innocent and could prove it by Arlis, appellant's son. He told deceased to get in the car, and they drove to Arlis' home, called him out, and deceased asked Arlis if he was not innocent, and Arlis said he did not know. Deceased then told appellant he could prove it by another man, but made no move to go see this other man, and he then shot deceased. On cross-examination appellant testified as follows: "Yes, sir, I had made up my mind to shoot him

whether he admitted it or whether he didn't admit it. * * * I did, when I left home, I had my mind made up to shoot him."

The trial court clearly erred in giving to the jury a charge apparently based on an attempted application of the law in manslaughter cases, said charge being as follows:

"(a) By the expression 'under the immediate influence of a sudden passion' is meant;

"That the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation.

"The act must be directly caused by the passion arising out of the provocation. It is not enough that the mind is merely agitated by the passion arising from some other provocation, or a provocation given by some other person than the party killed."

Even when we had statutory manslaughter, which specifically named an insult to a female relative as a sufficient cause for producing sudden passion, in many cases we held it erroneous to limit the provocation to what occurred at the immediate time of the killing, but held that the jury should be told that they might look to all the facts in determining whether there was sudden passion arising from an adequate cause.

However, we are specifically forbidden by article 666, C. C. P., to reverse any case for errors in the charge "unless same be calculated to injure the rights of defendant." We are unable to bring ourselves to agree with able counsel for appellant in their argument and brief wherein they urge that the jury may have been so misled by said charge as to cause them to conclude that deceased having done nothing at the time of the meeting between the two men, to produce sudden passion, the jury might, because of the error in the charge, have found him guilty of murder with malice aforethought, and that this finding might have further led them to refuse him a suspended sentence, for which he was asking, which last seems after all to be the gist of the complaint.

The jury gave to appellant the lowest penalty for murder. They did not specify in their verdict whether they found him guilty of murder with or without malice. The facts in this record would have amply supported a verdict of guilty upon malice. The killing did not take place at the first meeting, or at the first of the second meeting, but, according to appellant's own admission, he "had his mind made up to shoot him" before going to where deceased was. This does not seem to bring appellant in that class who are so overcome by the rush of sudden passion as to render them incapable of cool reflection and

hurl themselves upon their victim, regardless of arms, surroundings, etc., when they come face to face with him. The jury had all the facts before them. It would be basing speculation upon speculation to try to reach the conclusion that the court's error in the charge caused the jury to return a verdict of guilty of murder with malice, and that this caused them to deecline to give appellant a suspended sentence.

Finding no error in the record calling for a reversal, the judgment will be affirmed.

*Affirmed.*